# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

THOMAS GOLDEN,

      Plaintiff,

  v.

OHIO VALLEY PHYSICIANS, INC.

      Defendant.

Case No. 2:25-cv-416

JUDGE DOUGLAS R. COLE
Magistrate Judge Vascura

## OPINION AND ORDER

Ohio Valley Physicians, Inc., Defendant in this Fair Labor Standards Act collective action, moves to dismiss Plaintiff Thomas Golden's Complaint (Doc. 1) seeking overtime pay. Defendant contends Golden's employment agreement contains a forum-selection clause requiring that Golden pursue his claim, if at all, in West Virginia. For the reasons set forth more fully below, the Court **DENIES** Defendant's Motion to Dismiss for Improper Venue (Doc. 11).

## BACKGROUND

Ohio Valley Physicians, Inc. (OVP) is a West Virgina-based healthcare company that provides various medical services to hospitals and communities in Ohio and surrounding states. (Doc. 1, #3; Doc. 1-4, #16). Specifically, it offers emergency-staffing, primary-care, addiction-treatment, and hospitalist services in Ohio, Kentucky, West Virginia, and South Carolina.[1] (Doc. 1, #3; *see* Doc. 1-4, #16). Thomas

---

[1] Golden's Complaint alleges that OVP provides "health services and staffing" at various facilities in Ohio and Virginia. (Doc. 1, #3). But Golden's employment agreement says that

Golden, a former OVP employee, worked as an Advance Practice Registered Nurse at OVP's Southeastern Ohio Regional Medical Center in Cambridge, Ohio. (Doc. 1, #3; Doc. 1-4, #29–30). Consistent with a provision of his employment agreement (the Agreement) that required him to provide 90 days' written notice to OVP before he terminated it, (Doc. 1-4, #17), Golden tendered a resignation letter on March 4, 2025, indicating that he would be stepping away from OVP, effective June 2, 2025. (Doc. 11, #59; Doc. 11-1, #66).

But, before that effective resignation date arrived, Golden filed this Fair Labor Standards Act (FLSA) collective action on April 17, 2025. (Doc. 1). Golden alleges that OVP systematically failed to pay Golden, and other similarly situated workers, overtime pay for time worked in excess of 40 hours per workweek. (*Id.* at #1). Rather, Golden says, OVP paid him and others on a "flat-rate" basis, (*Id.* at #1, 4–6), a practice the FLSA proscribes, *see* 29 U.S.C. §§ 207(a)(1), 216(b). Golden seeks backpay, liquidated damages, prejudgment and post-judgment interest, and attorneys' fees and costs. (Doc. 1, #6).

According to OVP, however, a threshold procedural matter bars the Court from adjudicating this case on the merits. (Doc. 11). Specifically, Golden's employment agreement contains a choice-of-law and forum-selection clause. (*See* Doc. 1-4, #27). As to the former, the agreement provides that,

> [w]ith the exception of issues pertaining to wage payment and collection, workers' compensation, professional licensure, and facility licensure/accreditation, which are governed by the laws of the state where the Assigned Location is situate[d], the Parties jointly agree that

---

OVP provides services to patients at facilities in Ohio, Kentucky, West Virginia, and South Carolina. (Doc. 1-4, #16).

2

>  this Agreement shall be governed and interpreted in accordance with the laws of the State of West Virgina.

(*Id.*). And in terms of the forum, the agreement states that "any dispute with respect to enforcing this Agreement shall be resolved by the courts, either state or federal, located in Huntington, Cabell County, West Virginia." (*Id.*).

The parties dispute the import of this latter clause. In its motion, OVP contends that the forum-selection clause requires the Court to dismiss this action for improper venue on the grounds that the action must proceed, if at all, in the identified West Virginia courts. (Doc. 11). Golden, on the other hand, argues that this Court may preside over the case notwithstanding that clause. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, Doc. 13). OVP has now replied, (Doc. 18), and Golden has filed a surreply, (Doc. 20). So the matter is ripe for review.

## LEGAL STANDARD

As both parties point out, courts have not always been consistent in the procedural vehicle by which they enforce forum-selection clauses. At one time, some courts analyzed such clauses under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim), while others addressed them under Rule 12(b)(3) (improper venue). *Compare Painting Co. v. Weis Builders, Inc.*, No. 2:08-cv-473, 2009 WL 150674, at *5 (S.D. Ohio Jan. 21, 2009) (dismissing under Fed. R. Civ. P. 12(b)(3)), *with Hellmuth, Obata & Kassabaum, P.C. v. Bd. Of Comm'rs of Hamilton Cnty., Ohio*, No. 1:05-cv-592, 2005 WL 3465655, at *3 (S.D. Ohio Dec. 19, 2005) (dismissing under Fed. R. Civ. P. 12(b)(6)). "[T]his difference of opinion center[ed] around whether the parties' contractual designation of a forum can render the venue dictated by statute

3

'improper.'" *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002). But the Supreme Court has clarified matters on this front by expressly rejecting the use of Rule 12(b)(3) to enforce forum-selection clauses. *Atl. Marine Constr. Co. v. United States Dist. Court.*, 571 U.S. 49, 52 (2013) ("The question in this case concerns the procedure that is available for a defendant in a civil case who seeks to enforce a forum-selection clause. We reject petitioner's argument that such a clause may be enforced by a motion to dismiss under … Rule 12(b)(3)."). And the Sixth Circuit has "held that a motion to dismiss under Rule 12(b)(6) is a permissible way to enforce forum-selection and arbitration clauses." *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 326 (6th Cir. 2019). Accordingly, the Court will analyze the clause under Rule 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). That is so, however, only as to well-pleaded factual allegations. The Court need not accept as true any legal conclusions alleged in a complaint; "labels and conclusions" or a

4

"formulaic recitation of the elements of a cause of action" will not suffice. *Iqbal*, 556 U.S. at 678 (cleaned up). And while well-pleaded allegations are accepted as true, they are just that—allegations.

A court analyzing a motion to dismiss under Rule 12(b)(6) generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). That said, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## LAW AND ANALYSIS

In seeking dismissal on venue grounds, OVP focuses solely on whether the Agreement's forum-selection clause is enforceable as a matter of federal law, (Doc. 11, #61–64; *see* Doc. 18, #90), an issue that Golden does not contest. Instead, Golden argues, as a matter of contract interpretation, that the forum-selection clause doesn't even apply to his FLSA claim. (Doc. 13, #69–71; Doc. 20, #116–17). These questions—enforceability and interpretation—are analytically distinct. *See, e.g.*, *Smith v. Swaffer*, 566 F. Supp. 3d 791, 800 (N.D. Ohio 2021). The Court starts with the latter. And, because the forum-selection clause, as interpreted, does not cover the claim here, the Court need not and thus does not address the enforceability issue.

To answer the interpretive question—whether the forum-selection clause applies to Golden's FLSA claim—the Court "must first identify the law that governs"

5

the dispute over the meaning of the forum-selection clause. *VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 401 (6th Cir. 2025). The Agreement contains an express choice-of-law provision (described below), but the Court must decide what choice-of-law rules to use in deciding whether that choice-of-law provision applies. If this were a diversity case, the Court would apply the choice-of-law rules from Ohio, the State in which the Court sits, to answer that question. *Id.* (quoting *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021)). But "[t]he Sixth Circuit has recognized that federal common law governs choice-of-law issues in federal question cases." *Jackson v. Corizon Health, Inc.*, No. 19-13382, 2025 WL 546365, at *3 (E.D. Mich. Feb. 19, 2025) (citing *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 570 (6th Cir. 2001)); *see also Ent. Grp. Planning, Inc. v. Falba*, 73 F.3d 361, 1995 WL 764117, at *2 (6th Cir. 1995) (Table) ("In a federal question case, choice of law principles are derived from federal common law."). So the Court uses federal choice-of-law rules to answer this first choice-of-law question here.

In assessing "whether a choice of law provision in a contract is given effect" under federal choice-of-law rules, the Sixth Circuit has looked to the Restatement (Second) of Conflict of Laws, *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir. 2006), as it has in resolving other choice-of-law issues arising under federal common law, *see deSoto*, 245 F.3d at 570; *Bickel v. Korean Air Lines Co.*, 83 F.3d 127, 130 (6th Cir. 1996), *vacated in part on other grounds,* 96 F.3d 151 (6th Cir. 1996). And "the Restatement accepts choice-of-law provisions, but for two exceptions," neither of which applies here. *Firexo, Inc. v. Firexo Grp. Ltd.*, 99

F.4th 304, 327 (6th Cir. 2024). So the Court gives effect to the Agreement's choice-of-law provision.

Turning to the language of that provision, it specifies that the Agreement "shall be interpreted in accordance with the laws of the State of West Virginia," except for "issues pertaining to wage payment and collection, workers' compensation, professional licensure, and facility licensure accreditation." (Doc. 1-4, #27). Here the parties' underlying dispute admittedly "pertain[s] to wage payment and collection" issues, but the dispute about the forum-selection clause itself does not. So the Court looks to West Virginia law to determine the scope of that forum-selection clause.[2]

The West Virginia Supreme Court has expressly held that, "to determine whether certain claims fall within the scope of a mandatory forum-selection clause, the deciding court must base its determination on the language of the clause and the nature of the claims that are allegedly subject to the clause." *Caperton v. A.T. Massey Coal Co.*, 690 S.E.2d 322, 340 (W. Va. 2009). As to the interpretation of the Agreement's language, it is "well settled that the words of an agreement should be given their natural and ordinary meaning, because the parties presumably used the

---

[2] Both parties overlook the significance of the choice-of-law clause in resolving the dispute over the appropriate forum. Golden suggests that the language in the choice-of-law clause, which excludes "issues pertaining to wage and payment collection," directly excludes this FLSA action from the scope of the forum-selection clause. (Doc. 13, #69 ("The [forum-selection] clause … excludes 'issues pertaining to wage payment and collection.'")). As OVP points out, however, the "exclusion of wage payment issues … only applies to what law will be applied, and not where the case will be heard." (Doc. 18, #90). In other words, that exclusionary language applies to choice of *law*, not choice of *forum*. So Golden errs in relying on language from the choice-of-law clause to contend that the separate forum-selection clause does not apply, and OVP is correct to assert that the choice-of-law clause does not decide that question. What both parties miss, though, is that the choice-of-law clause still plays a role: it requires the Court to look to West Virginia law to *interpret* the forum-selection clause.

7

words in the sense in which they were generally understood." *Bennett v. Dove*, 277 S.E.2d 617, 619 (W. Va. 1981). Using this framework, the Court must determine whether Golden's FLSA claim is subject to the forum-selection clause.

The Agreement's forum-selection clause provides that "any dispute with respect to enforcing this Agreement shall be resolved by the courts, either state or federal, located in Huntington, Cabell County, West Virginia." (Doc. 1-4, #27). The question, then, is whether an FLSA claim is a "dispute with respect to enforcing this Agreement." West Virginia courts have not decided that interpretive question. So the Court looks to *Caperton*, the West Virginia high court's key case on forum-selection-clause analysis. There, the court held that a clause providing that "all actions brought in connection with this Agreement shall be filed and decided in the Circuit Court of Buchanan County, Virginia" was broad enough to sweep in tortious interference, fraudulent misrepresentation, and fraudulent concealment claims. 690 S.E.2d at 329, 342–43.

Several aspects of the West Virginia court's analysis warrant comment as relevant to the context here. First, the court seized on the phrase "all actions." *Id.* at 341. The parties' choice to use the general term "all" evidenced "no intent by the parties to t[he] agreement to limit in any way the type of actions to which it applies." *Id.* Second, considering the "usual, ordinary, and popular meaning" of the phrase "in connection with," it concluded that the "intended scope of the forum-selection clause [was] quite broad." *Id.* Relying on several dictionary definitions, the court took the phrase to mean that, "so long as the claims asserted in this action bear a logical

8

relationship to [the agreement], they fall within its scope, regardless of whether they sound in contract, tort, or some other area of the law." *Id.* As to the claims themselves, the court reasoned that the three tort claims at issue stood in a "logical relationship" to the agreement because each flowed from the invocation of the agreement's force majeure clause. *Id.* at 342–43.

Turn now to the Agreement's language. For starters, the *Caperton* agreement and the Agreement here both use general terms—"all actions" and "any dispute," respectively. *Id.* at 329; (Doc. 1-4, #27). So, as in *Caperton*, there is no reason to conclude that the parties intended to categorically oust certain kinds of claims from the clause's scope. That said, the phrase "in connection with this Agreement" from *Caperton* seems to sweep broader than the phrase at issue here, which applies only to actions "with respect to *enforcing* this Agreement." *Caperton*, 690 S.E.2d at 329; (Doc. 1-4, #27) (emphasis added). To "enforce" is to "attempt to make someone else comply with a law, rule, obligation, etc." or "compel[] compliance with a law, mandate, command, decree, or agreement." *Enforcement*, Black's Law Dictionary (12th ed. 2024). And as the Agreement's text provides, the "enforcing" goes only to "*this* Agreement." (Doc. 1-4, #27) (emphasis added).

But then there is an additional wrinkle—the "with respect to" language. As West Virginia's high court has noted since *Caperton*, "courts describe the phrase 'with respect to' as synonymous with the phrases 'with reference to,' 'relating to,' 'in connection with,' and 'associated with,' and they have held such phrases … to mean simply 'connected by reason of an established or discoverable relation.'" *State ex rel.*

9

*Gorlin v. Webster*, No. 19-0423, 2019 WL 5858074, at *5 n.7 (W. Va. Nov. 8, 2019) (quoting *Coregis Ins. Co. v. Am Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (Sotomayor, J.) (collecting cases)). So, as West Virginia courts have analyzed the issue, "in connection with" and "with respect to" are synonymous.

All this puts the Court in something of a quandary. The phrase "enforcing this Agreement," on its own, is arguably narrow, as opposed to the phrase "with respect to this Agreement," which would be broad. *See, e.g.*, *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 21–22 (1st Cir. 2011). But here we have the middle ground—"with respect to enforcing this Agreement." And it's not exactly clear what follows from the appending the broadening "with respect to" to the front end of the narrower "enforcing this Agreement" language. Nonetheless, putting the analysis laid out above together, the question would seem to be whether this dispute—an FLSA collective action—bears some relation (the "with respect to" part) to the act of attempting to compel compliance with the Agreement (the "enforcing this Agreement" part).

Against that backdrop, Golden has the better of the argument. Golden "asserts a straightforward statutory claim under the [FLSA]" and "[t]he rights at issue arise entirely under federal law, independent of the contract." (Doc. 13, #70). True, the rights under federal law would not exist absent an employment relationship, which is what the Agreement creates. But the rights he asserts do not themselves in any way derive from the substance of that contract. So, while the claim bears some relation to the Agreement itself, it is hard to see how the claim is in any way connected to the act of compelling compliance with (i.e., enforcing) the Agreement.

10

Thus, the Court holds that Golden's FLSA claim is not covered by the forum-selection clause.

Because both parties rely on *Crouch v. Guardian Angel Nursing, Inc.*, No. 3:07-cv-541, 2009 WL 3738095 (M.D. Tenn. Nov. 4, 2009) to argue their respective positions, some additional discussion of that decision is warranted, as well. *Crouch* held that a forum-selection clause did not preclude FLSA plaintiffs seeking overtime pay from litigating in the Middle District of Tennessee because the question whether the clause included the FLSA claim depended "on whether resolution of the claims relates to interpretation of the contract." *Crouch*, 2009 WL 3738095, at *3 (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)). Golden says that *Crouch* (and the *Manetti-Farrow* framework it reflects) supports his position because his FLSA claim does not require "interpretation of the contract." (Doc. 13, #71). But OVP says the opposite, arguing that one of its potential defenses will be that Golden and those similarly situated were subject to an overtime exemption, which will turn on the terms of (and thus require the Court to construe) the Agreement. (Doc. 18, #92 ("Unlike [*Crouch*], a determination as to whether the exemption applies will require an interpretation of the Employment Agreement and the job duties set forth therein.")).

The problem for OVP is that, in *Caperton*, the West Virginia high court specifically rejected, as a matter of West Virginia law (which governs this issue), the *Manetti-Farrow* approach on which *Crouch* relies. 690 S.E.2d at 343 n.31. That is, whether a given claim "requires interpretation of the contract" is not the dispositive

11

question under West Virginia law. *Id.* True, the *Caperton* court noted that it *might* be open to the *Manetti-Farrow* approach if it were "presented with a more narrowly tailored forum-selection clause applying to claims 'arising under' or 'arising out of' the contract." *Id.* And then further muddying the water, in a single sentence in a later case, the West Virginia Supreme Court seemed to apply the *Manetti-Farrow* approach without comment or explanation to a forum-selection clause that applied to "[a]ny legal suit, action, or proceeding arising out of the breach" of the agreement that contained the forum-selection clause. *See State ex rel. 3C LLC v. O'Briant*, 875 S.E.2d 274, 277 & n.8, 281 & n.24 (W. Va. 2022).

All told, it's something of a mess. But as a matter of comity and federalism, the Court declines to assert that the West Virginia Supreme Court has sub silentio adopted a new rule. *Cf. In re Darvocet, Darvon, & Propoxyphene Prods. Liability Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) ("[F]ederal courts must be cautious when making pronouncements about state law."). That said, the Court also notes that, even if the *Manetti-Farrow* approach does apply, it is not clear that OVP's contemplated defense is sufficient to bring this case within the scope of the forum-selection clause. Cases applying the *Manetti-Farrow* approach tend to focus on whether proving the allegations in the *complaint* requires contract interpretation.[3] *See Manetti-Farrow*,

---

[3] OVP suggests that it is Golden who "is now claiming that his job duties, as set forth in his Employment Agreement, are not sufficient to categorize him as 'exempt' for overtime purposes under the [FLSA]." (Doc. 18, #92–93). But "[t]he law places the burden on the employer to show that an exemption applies" by a preponderance of the evidence. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48, 54 (2025) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)). To establish his prima facie case, Golden need only show that (1) an employer-employee relationship existed; (2) the employer or its employees engaged in interstate commerce; (3) the employee worked more than forty hours in a workweek; and

12

858 F.2d at 514 (framing the inquiry as whether the plaintiff's "claims" or "complaint" require contract interpretation); *Weidner Comms. Inc. v. Faisal*, 671 F. Supp. 531, 537 (N.D. Ill. 1987) ("The entire case whether pleaded in contract or tort hinges upon breach of the agreements between the parties."). As *Crouch* suggests, the *Manetti-Farrow* rule is trying to prevent "a situation in which the plaintiffs have engaged in the 'artful pleading of [non-contract] claims' in the context of a contract dispute in order to avoid a forum-selection clause." 2009 WL 3738095, at *3. As discussed, though, this is, at bottom, an FLSA dispute, *not* a contract dispute. Moreover, this understanding of *Manetti-Farrow* is more consistent with the strictures of Rule 12(b)(6), which requires that the Court decide this Motion to Dismiss based on Golden's Complaint, not defenses that OVP *might* assert (*see supra* note 3) in response to that Complaint. *See Armengau*, 7 F. App'x at 343.

In sum, the Court holds that the forum-selection clause does not reach Golden's FLSA collective action.

## CONCLUSION

Because Golden's FLSA claim is not covered by the forum-selection clause, the Court **DENIES** OVP's Motion to Dismiss for Improper Venue. (Doc. 11).

**SO ORDERED.**

October 28, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

(4) overtime was not paid. *Dep't of Lab. v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 679 (S.D. Ohio 2025).